### FREDERICK O. NORTON, RESPONDENT, *v.* JACOB L. SNYDER AND OTHERS, APPELLANTS.

*Lease — covenant of renewal — when grantee of lessor not bound by a renewal by his grantor.*

One S., the owner of certain land upon which there was a quarry, leased the right to quarry and remove stone therefrom for twenty-five years, and agreed to renew the said lease for the term of twelve years, the consideration for such renewal to be determined by appraisers. Prior to the expiration of the twenty-five years, S. sold a portion of such land to the plaintiff excepting and reserving the rights of the owners of said lease. *Held*, that upon the expiration of the twenty-five years, the right to renew the lease, in so far as it related to the stone upon the land sold to the plaintiff, was in him and not in S., and that a renewal of the lease by S. did not affect the plaintiff's land.

APPEAL from an order made at Special Term by Mr. Justice LEARNED, granting an injunction against the defendants, restraining them from doing certain acts upon premises claimed by the plaintiff.

The complaint charges that the plaintiff is the owner of a certain ten-acre lot in Rosendale, Ulster county, containing cement stone; and that the defendants have entered upon said lot, and are attempting to carry away such cement stone.

The defendants deny that the plaintiff is the owner of, or in any manner entitled to, the cement stone in and upon the premises described; and they deny that they have quarried, carried off, or attempted to quarry or carry off, any cement stone from the plaintiff's lot. The instruments and conveyances under which the respective parties claim their rights to the cement stone in question, are described in the opinion of Mr. Justice LEARNED, delivered at Special Term, upon granting the order for the injunction. The following is his opinion:

LEARNED, J. :

The alleged trespasses are not such as would in an ordinary case call for an injunction. But the question involved is the right to a quarry, and therefore if the plaintiff owns the quarry, he should be protected by this remedy.*

The rights of both parties come from Silas Snyder, who is assumed to have owned the land and the quarry on it, on the 2d of October, 1848. On that day he executed an indenture to John H. Stephens, recorded October 4, 1848. By this, in consideration of $6,000, he bargained, sold, demised and leased to Stephens, his heirs and assigns, "for the term, and upon the conditions hereinafter mentioned, the exclusive right and privilege in all the cement stone in or on" certain premises of 170 acres (including the ten acres in question) "and for the purposes hereinafter stated." There is then a covenant by Snyder for himself, his heirs and assigns, that Stephens, his heirs and assigns, may at all times quarry and remove any cement stone on the premises, and may receive the full benefit of quarrying, in as full a manner as Snyder might do, "had not this lease been made," for the term of twenty-five years from date.

And in case Stephens, his heirs and assigns, shall not, within said twenty-five years, quarry and remove all the cement stone, Snyder binds himself, his heirs and assigns, to execute to Stephens, his heirs and assigns, a further lease of the term, of twelve years

* West Point Company v. Reymert, 45 N. Y., 703.

from the expiration of the twenty-five, "for the purposes above mentioned." The consideration to be paid for said last mentioned privilege, is to be determined as follows: The parties or their legal representatives are to submit the subject to two impartial men, each choosing one, who shall determine what amount of money, and when and how to be paid, as a fair consideration for the same; with a provision for an umpire if they disagree.

The consideration of $6,000 for this first indenture was to be paid as follows: $4,000 in cash, and the balance in about a year; with an agreement that the lease should be void on non-payment for ten days.

John H. Stephens assigned his rights under this instrument to the Newark and Rosendale Lime and Cement Company, by deed, dated October 25, 1848, and acknowledged the same day. That company assigned their rights to Jacob L. Snyder, by deed, dated October 5, 1872, and acknowledged January 5, 1873.

An indenture dated October 5, 1872, and acknowledged January 11, 1873, was thereupon made between Silas Snyder and Jacob L. Snyder, reciting the indenture to Stephens, and giving to Jacob L. Snyder the same rights for twelve years from October 2, 1872, in the 170 acres. The consideration of this indenture is $500, cash, and one-half of the net proceeds of the cement. Under this, the defendants claim.

Silas Snyder, by full covenant deed, conveyed, October 31, 1857, the ten acres in dispute (part of the 170) to James T. Anderson and William Anderson, "excepting and reserving for the Newark Cement Company the privilege of quarrying and conveying off the cement stone which they hold by virtue of a certain lease for the same.".

(The Newark Cement Company is the Newark and Rosendale Lime and Cement Company.)

James T. Anderson conveyed by full covenant to William Anderson, April 7, 1866, with same exceptions. William T. Anderson conveyed by full covenant to Henry C. Carman, May 2, 1872, with same exceptions. Henry C. Carman quit-claimed to the plaintiff, May 13, 1872. And this is the plaintiff's title to the ten acres in dispute.

The question is as to the effect of the original indenture between

Snyder and Stephens, and of the subsequent indenture between Snyder and Snyder.

It is plain that, as to these ten acres, the plaintiff has all the rights which Silas Snyder had, after his execution of the indenture to Stephens. The reservation and exception in the deed to Anderson, were intended to relieve the grantor from any liability under his covenants of warranty, etc., on account of the Stephens indenture, then held by the company. That is the only meaning of that reservation or exception. It reserved nothing for the grantor, but only had this effect: that the grantee took the premises, subject to the lease, as it is called in that instrument. This seems to me to be the plain meaning of the language, and to be the only construction that can be given to it. " Excepting and reserving for the *Newark Cement Company* the privilege which *they hold* by a certain lease." It was not a reservation of anything for the grantor; but it was only a necessary precaution, lest he should warrant absolutely, and thus be made liable on his covenants.

The defendants do not claim that the title to the cement passed to Stephens by the first indenture. But they claim that the exception in the deed to Anderson had the effect of making Silas Snyder owner of the cement, notwithstanding his deed. I do not think that is the true construction. The thing reserved is a "*privilege.*" It is a thing *held by the Newark Company,* and it is reserved for them.

The indenture between Snyder and Stephens gave a license for twenty-four years, irrevocable. It did not purport to convey the title to the cement stone. It contemplated the possibility that all of the stone might not be removed in twenty-four years, and, in that case, agreed to give a further license for twelve years. It would certainly be possible that all the stone should not be removed, even at the end of the second period. The language is quite accurate. It sells the exclusive right and privilege in the cement stone, for the purpose of quarrying and removing it for the term of twenty-four years.

Stephens and his assigns had also a right to a further license ; and this license, Snyder, for himself his heirs and assigns, covenanted to give. If this was a personal covenant only, then, if Silas Snyder had put it out of his power to perform it, he would be personally

liable; and that would be the only right of the owner of the original indenture. But if the covenant runs with the land, which is the most equitable view, and the most favorable to the defendant, then it must be the present owners of the land who are to execute the continuing license for twelve years.

If this were a case of the lease at a fixed annual rent, with a right of renewal in the lessee at the same rent, then the only matter of consequence to the owner of the remainder would be, that the rent should be paid to him. But this case is very different. The owner and the licensee are each to choose a man who shall determine what amount of money, when and how to be paid for the continuation of the license. This is a matter of the utmost importance to the owner.

Assuming then that the plaintiff, as to his ten acres, may be compelled to execute, on some terms and in some way, a license to Jacob L. Snyder to quarry for twelve years, yet he clearly has a right to the appointment, or to a share in the appointment of the parties, who shall determine the compensation. For, as it seems to me, that compensation, so far as affects the ten acres, belongs to the plaintiff, and not to Silas Snyder. And the wrong is seen in the very indenture executed between Silas Snyder and Jacob L. Snyder. That provides for compensation, viz., $500 and one-half the net proceeds of the cement, to be paid to Silas Snyder, and this, of course, is for the cement partly on these ten acres (among the 170), as to which he has had no right or interest whatever since 1857.

It is not necessary for me to decide that the covenant does, in fact, run with the land. I assume, as the view most favorable to the defendant, that it does so run, or that it is in some way binding upon the plaintiff. Nor is it necessary to decide in what manner the compensation for the renewal of the privilege is to be adjusted with the plaintiff and the other owner of the land covered by the original indenture. It is enough that, as it seems to me, the indenture, executed by Silas Snyder to Jacob L. Snyder, conveyed no rights as to the cement on the plaintiff's ten acres.

It is said by the defendants, that equity looks on that as done which ought to have been done. They urge that the assignee of the original indenture had a right to a renewal, as against the

plaintiff, and that the court should consider the renewal as having been executed. But the answer to this is, that the defendant, Jacob L. Snyder, has assumed a position in hostility to the plaintiff, and has taken a license from Silas Snyder. He claims to quarry the cement, as licensee of Silas Snyder, and denies that he is to make any compensation to the plaintiff. If proceedings were going forward between Jacob L. Snyder and the plaintiff, to adjust the compensation for a further term, according to the provisions of the indenture to Stephens, and, pending such proceedings, these defendants were quarrying, holding themselves liable to make compensation, a very different case would be presented.

I think that the injunction should issue.

Nothing was said on the argument, as to the amount of security which should be given, and I will consider that question as open, if the parties desire.

*A. Schoonmaker, Jr.*, for the appellants.

*S. Hand*, for the respondent.

BOCKES, J. :

The opinion of Mr. Justice LEARNED, at Special Term, is deemed quite satisfactory on all questions necessary to be considered on this appeal. A few observations, however, on the question as to the right of the defendant, Snyder, to a renewal of the lease or license given to Stephens, in 1848, may be of some moment.

The term of twenty-four years, specified in the lease, expired in 1872. Now, let it be conceded that the right to quarry and remove the stone under that license or grant then terminated, and it would follow that, after that period, the defendants were trespassers; and as the trespass was in the nature of waste, and productive of irreparable injury to the freehold, they could be enjoined from the further commission of the alleged unlawful acts, at the instance of the owner of the fee.

First, then, has the plaintiff shown himself to be the owner of the fee? We concur with the learned judge, at Special Term, in his conclusion on this question. We are of the opinion that the plaintiff, on the papers before the court, shows himself to be the

owner of the fee of the ten acres, subject only to the terms and conditions of the grant of 1848. As to those premises, he stands in the shoes of Silas Snyder, the original grantor and common source of title, with all his rights, and subject to all his obligations as regards any claim for a renewal of the lease. Through various mesne conveyances, he had acquired all rights remaining to Silas Snyder, after that instrument took effect. Consequently, the attempted renewal by the latter, in 1872, conferred no rights as against the plaintiff. The defendants were, therefore, without justification in quarrying and removing the stone after the expiration of the original term of twenty-four years, specified in the lease, in the absence of further grant or license from the owner of the fee.

The reasoning and suggestions of Mr. Justice LEARNED in support of the conclusions above adopted, are well stated in his opinion, and need not be here repeated.

It appears that the defendant, Jacob L. Snyder, has acquired, or claims to have acquired, all rights conferred upon the lessee or grantee, by the instrument of October 2d, 1848; among which was the right to have a renewal of the lease for the further term of twelve years. Concede that he possessed this right, and this is the foundation of his justification in this case, he might then demand and obtain from the plaintiff, the owner of the fee, performance of the condition for renewal, and the latter would be bound to respond to such just and lawful demand, inasmuch as the covenant for renewal ran with the land. The right to such renewal would, however, depend, *first*, on the validity of the covenant for renewal, and *secondly*, on the question whether the defendant, Jacob L. Snyder, had complied with the conditions on his part to be performed in order to entitle him to claim and have a renewal from the plaintiff. These questions are open for litigation between the parties, and until they are judicially determined, the defendants should be enjoined and restrained from committing waste on the premises in dispute. The plaintiff has the legal title. The rights of the defendant, Jacob L. Snyder, are equitable only, as he here presents them; and, until his rights are definitely determined, he should not be permitted to appropriate the freehold in a way which in law is deemed waste. Until his right to a renewal be established, and the conditions upon which the further term should be

held and enjoyed, are settled and declared, either by amicable arrangement or by compulsory proceedings, he should desist from the commission of waste. Doubtless, he may have affirmative relief against the plaintiff, in case he can show himself entitled to a renewal or continuance of the lease for the further term of twelve years.

Nor has he lost or forfeited that right by taking, in form, a renewal from Silas Snyder. All that need be said in regard to that is, that the renewal by the latter is valueless as a protection against the claims of the plaintiff. He is bound to seek a renewal from the plaintiff, and must obtain it from him amicably or by compulsory proceedings, showing himself entitled to it; or, he must stand without justification for the acts complained of. It is sufficient here to say that the defendant, Jacob L. Snyder, has not here shown, before us, such a clear right to remove the stone as entitles him to have the injunction discharged. He must establish his right to a renewal, and have it adjudged to him before he can be allowed to cause irreparable injury to the freehold.

I am of the opinion that the injunction was properly granted; and that it should be continued until the rights of the parties are determined by an open trial. It is presumed that ample security was given on granting the injunction, to indemnify the defendants against all damages which can result to them therefrom.

The order appealed from must be affirmed, with ten dollars costs.

Present — MILLER, P. J., BOOKES and BOARDMAN, JJ.

Order affirmed, with ten dollars costs.